**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3843-16T2

K.B.,[1]

    Plaintiff-Appellant,

v.

T.B.,

    Defendant-Respondent.

_____

Submitted October 29, 2018 – Decided November 21, 2018

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-1749-12.

Pamela M. Cerruti, attorney for appellant.

T.B., respondent pro se.

PER CURIAM

_____

[1] We refer to the parties by initials to protect their privacy. R. 1:38-3(d)(1).

In this post-judgment matrimonial matter, plaintiff appeals from the Family Part's March 30, 2017 order, following a plenary hearing, requiring him to pay defendant $75,000 in counsel fees. Because defendant did not produce an affidavit of services or any other evidence detailing those fees, and the trial judge did not make any findings concerning the reasonableness of the fees charged, we are constrained to reverse and remand for further proceedings.

The parties are fully familiar with the history of this litigation and the facts relevant to this appeal. Therefore, we need only summarize the most salient facts here.

The parties were married in 1990, and divorced in 2013. They incorporated their Property Settlement Agreement (PSA) into their final judgment of divorce. During the marriage, plaintiff worked as a marketing director for Donovan Data Systems (DDS). In 2012, DDS merged with a company called Mediaocean, and plaintiff remained there until March 31, 2014.

Although his annual income was as high as $1.15 million during the marriage, plaintiff was earning $250,000 plus commissions at the time of the divorce. As alimony, Article 3.1 of the PSA required plaintiff to pay defendant

one-third of his annual gross earned income up to $480,000, and 20% of his gross earned income up to $1.150 million as it was received.[2]

In Article 4.9, the PSA addressed the equitable distribution of 5000 stock options that plaintiff received as a result of his employment with DDS. The stock options were scheduled to vest on four different dates. The first 3000 options would vest on April 9, 2012; the next 665 on March 1, 2013; 670 more on March 1, 2014; and the final 665 on March 1, 2015. Pursuant to the PSA, defendant was to receive a designated portion of each of the first three distributions, but was not entitled to receive any of the options that would vest on March 1, 2015.

Article 3.1 of the PSA stated that for purposes of determining his alimony obligation, plaintiff's annual gross income did not include any of the stock options to be received by him under Article 4.9. The parties appended a constructive trust agreement concerning the stock options (Callahan Trust) to the PSA. In pertinent part, Paragraph D.9 of the Callahan Trust required plaintiff to notify defendant within twenty-four hours if his employment at

---

[2] As used in Article 3.1, the term "gross earned income" included deferred compensation. However, any income plaintiff earned over $1.150 million in a year was not subject to alimony.

MediaOcean was terminated, or if he intended to exercise any of the stock options. Paragraph D.10 stated that if defendant lost the right to have plaintiff

> exercise any stock options on her behalf as a result of [his] failure to comply with th[is] notice provision[,] the [c]ourt shall have reserved jurisdiction to determine the amount of the monetary loss, if any, resulting to [defendant] and shall order reimbursement to her by [plaintiff] of that monetary loss, plus counsel fees and associated costs.

In the event one of the parties did not comply with the PSA, Article 8.22 stated:

> The parties represent and acknowledge that if either party must seek enforcement of the provisions contained within this Agreement, the defaulting party shall pay 100% of the other party's counsel fees and costs in connection with [them]. The parties specifically waive their respective rights to a court determination of this issue under R. 5:3-5, Williams v. Williams, 59 N.J. 229 (1971), and any prevailing counsel fee law at the time of enforcement.

In May 2015, defendant filed a motion to enforce certain provisions of the PSA. Among other things, defendant alleged that plaintiff had failed to pay certain medical expenses, car payments, and life insurance premiums as required by the PSA. With particular relevance to the present appeal, defendant asserted she reviewed plaintiff's 2014 tax return and learned he received an unexplained $1 million from his former employer, DDS. He presented a W-2 form for this

4

payment, which defendant argued demonstrated it was some form of gross income, such as deferred income because defendant was no longer working at DDS. Defendant asked the court to order plaintiff to pay her one-third of the $1 million as alimony pursuant to Article 3.1 of the PSA, together with her counsel fees under Article 8.22.

Plaintiff opposed the motion concerning the $1 million payment. He alleged that Michael Donovan, the founder and chief executive officer of DDS, agreed to accelerate the vesting of the last group of stock options, so that he would receive the third and fourth groups by the end of March 2014. Donovan then agreed to buy 1000 stock options back from plaintiff for $1 million. These 1000 options did not include any of the 112 options defendant was supposed to receive as her share from the third group. Therefore, only plaintiff benefitted from this arrangement. Because the $1 million represented payment for stock options, plaintiff argued that defendant was not entitled to any portion of it as alimony under Article 3.1 of the PSA. In response, defendant alleged that plaintiff violated the Callahan Trust by failing to notify her of the early vesting of the options, thereby depriving her of the opportunity to also sell her options back to Donovan.

On July 13, 2015, the trial judge granted defendant's enforcement motion in part, and denied it in part. The judge ordered plaintiff to make a number of the payments sought by defendant, including reimbursement of medical expenses, car expenses, and insurance premiums. However, the judge denied defendant's motion for additional alimony. In so ruling, the judge accepted plaintiff's representation "that the monies were from the sale of his share of the [DDS] stock options."

Nevertheless, the judge awarded defendant $3527.50 in counsel fees and costs under Article 8.22 of the PSA. Notably, the judge stated that because she "only granted some of the relief sought by defendant, which was enforcement of plaintiff's obligations under the [PSA], and denied the other relief," defendant was only entitled to approximately half of the fees she claimed. The judge also reviewed the affidavit of services prepared by defendant's attorney, and struck a number of the requests for payment in determining an appropriate fee award.

Defendant filed a motion for reconsideration. At oral argument on the motion, plaintiff and his attorney were unable to provide specific information concerning the sale of the stock. Accordingly, on April 1, 2016, the judge granted defendant's motion. The judge stated that "[b]ecause plaintiff has presented so many conflicting explanations and facts as to the $1 million

6

payment," a plenary hearing was needed "to determine the truth about the $1 million payment." The judge ordered the parties to exchange discovery. She also directed plaintiff "to advance defendant $25,000 as a litigation fund to cover the legal fees that defendant will incur for the discovery and the plenary hearing."

At the hearing, plaintiff, Donovan, and the DDS's chief financial officer, Mike Begley, testified. Donavan explained that he accelerated plaintiff's receipt of the fourth group of stock options because plaintiff was about to lose his job with Mediaocean. Donovan stated that he purchased the options back from plaintiff and other similarly situated employees.

The judge observed that Donovan's testimony concerning the stock options was particularly credible and helpful in determining what had occurred. She found that he "presented as a genuine and truthful person and as a generous employer who cared about his employees and generously compensated them for their work and dedication to DDS." Based upon Donovan's testimony, the judge concluded in a March 30, 2017 written opinion that the $1 million payment Donovan made to plaintiff was for 1000 of his stock options, rather than a payment of deferred income. Therefore, the judge held that defendant was not entitled to any portion of that payment as alimony under Article 3.1 of the PSA.

However, the judge determined that plaintiff violated the notice provisions set forth in the Callahan Trust as part of the PSA by failing to notify defendant that he was being terminated by Mediaocean or of his intention to sell the stock options back to Donovan. The judge found that if plaintiff had advised defendant of the sale, she would have had the opportunity to sell some of her allocated options as well. "To remedy that failure of [plaintiff]," the judge ordered plaintiff to pay defendant $14,677.60 pursuant to a formula the judge set forth in her decision. Plaintiff does not dispute this ruling on appeal.[3]

Finally, the judge addressed defendant's motion for counsel fees under Article 8.22 of the PSA. Defendant alleged she had incurred $75,000 in counsel fees in connection with the plenary hearing. Because the judge previously ordered plaintiff to advance her $25,000 to cover her legal expenses, defendant sought to compel plaintiff to pay the additional $50,000.

---

[3] The judge also found that plaintiff failed to pay defendant an additional $15,895 in alimony based on income he received in 2014 other than the payment for the stock options. On appeal, plaintiff asserts that the judge later rescinded this portion of the order, finding that it had been entered by mistake. Defendant disagrees with this allegation. Neither party provides documentation to support their respective claims. Because we are remanding this matter to address the issue of counsel fees, the parties are free to address this portion of the order as part of those proceedings.

The judge did not require defendant to present a certification of services detailing her attorney's fees. The record on appeal does not even include a retainer agreement. In stark contrast to how the judge handled counsel fees in her July 13, 2015 order, where she carefully reviewed every aspect of the fee request, this time the judge simply ordered plaintiff to pay all of defendant's fees, without requiring her to submit any proof that the fees were actually incurred or reasonable.[4]

The judge denied plaintiff's motion for counsel fees, explaining that she did so because plaintiff "earns substantially more than [d]efendant," and defendant's "motion for reconsideration was not filed in bad faith." This appeal followed.

On appeal, plaintiff primarily argues that the judge erred in granting defendant all of her fees because she did not prevail on all of the issues she raised at the plenary hearing, and failed to demonstrate that she actually incurred $75,000 in fees or that the fees were reasonable. We agree.

---

[4] After ordering plaintiff to pay all of defendant's counsel fees, the judge directed plaintiff to "provide . . . documented proof that her legal fees for the . . . post-judgment application were $75,000." The record does not disclose whether this documentation was ever provided. In any event, and as discussed below, the judge should not have ordered any fees without first carefully reviewing defendant's attorney's bills.

A-3843-16T2

It is well settled that a trial judge's award of counsel fees should "be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). However, our Supreme Court has cautioned that trial courts "should not accept passively the submissions of counsel to support" their client's request for attorney's fees. Id. at 335. "It does not follow that the amount of time actually expended is the amount of time reasonably expended." Ibid. (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). Hours are not considered reasonably expended if they are "excessive, redundant, or otherwise unnecessary" or are spent on "claims on which the party did not succeed" or "that were distinct in all respects from claims on which the party did succeed." Ibid. (internal quotation marks and citations omitted).

Applying these principles, we conclude that the judge mistakenly exercised her discretion in granting defendant all of the fees she sought in connection with the plenary hearing. Article 8.22 of the PSA stated that if a party sought enforcement of a provision of the PSA, "the defaulting party shall pay 100% of the other party's counsel fees and costs in connection with same." Although not specifically stated in the PSA, however, neither party disputes that fees should only be awarded under this provision if the enforcement motion is

10

successful and the fees are reasonable. Indeed, the judge interpreted Article 8.22 in this fashion in awarding fees on defendant's original enforcement motion and, at that time, only granted defendant's motion with respect to those portions of her motion where enforcement was ordered and then, only for the fees the judge determined were reasonable.

Unfortunately, the judge did not consider defendant's request for fees following the plenary hearing in the same fashion. Instead, the judge simply granted defendant all the fees she sought even though defendant did not submit a certification of the services rendered by her attorney, or a retainer agreement. The judge gave no consideration to the fact that defendant's primary argument at the hearing, her claim that she was entitled to a portion of the $1 million payment as alimony, was not successful. The judge also did not explain why she was awarding more than the $25,000 in fees she ordered plaintiff to pay prior to the hearing to cover her discovery and trial costs. Because we have no basis for determining on this record whether the fees sought by defendant were limited to those matters on which she succeeded, and were reasonable in terms of the hours spent and amounts charged, we reverse the judge's award of $75,000 in counsel fees to defendant and remand for further proceedings.

In so ruling, we reject the two other contentions plaintiff raises on appeal. As previously noted, Article 8.22 permitted fees to be granted if a party brought a successful enforcement motion without regard to whether the party also met the standards set forth in Rule 5:3-5. Plaintiff asserts that the judge incorrectly considered those standards in determining that defendant was entitled to fees. We disagree. While the judge discussed the Rule 5:3-5 factors, she specifically stated that she was only doing so to demonstrate that defendant would have been awarded fees even if the parties had not included Article 8.22 in the PSA. Thus, there was nothing improper about the judge reviewing these factors in her opinion.

Finally, plaintiff argues that he should have been awarded fees under Article 8.3 of the PSA. That provision states that if a party "institutes an action . . . to set aside [the PSA] or any of its terms or provision . . . for any reason," the other party will be entitled to "attorney's fees and related legal expenses and costs incurred in connection with the defense of such action or proceeding in the event that the clams or defenses of invalidity are dismissed, rejected or otherwise unsuccessful." However, defendant did not seek to overturn the PSA or any of its provisions and, instead, sought to enforce Article 3.1, which required plaintiff to pay her a portion of his gross income, by claiming that the $1 million, which

she did not know was a payment for the stock options, was deferred compensation. Therefore, Article 8.3 clearly did not apply to defendant's enforcement motion.

In sum, we reverse the trial judge's award of counsel fees to defendant and remand for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3843-16T2